Case No. 152193 Full Spectrum Software v. Forte Automation Systems, Inc. Good morning, Mr. Roessler. Morning. Good morning, Your Honors. May it please the Court, my name is Eric Loeffler, and I represent the appellant, Forte Automation Systems, Inc. Would the Court decide I'd like to reserve one minute for rebuttal? You may. Okay. Your Honor, we're here today after a jury trial with my client claiming that the court committed three substantial errors. And those three errors are as follows. That the district court erred in its denial of Forte's motion for judgment as a matter of law because no reasonable jury could have found that an implied contract, in fact, was created under the facts of the case. Secondarily, the secondary... Excuse me. I thought Quantum Merowick was also part of what went to the jury. Quantum Merowick also went to the jury, but the jury returned a verdict only on the implied contract count, not on Quantum Merowick. Second, Your Honors, that the district court erred in submitting the 93A claim to the jury. And lastly, that the district court erred in its denial of Forte's motion for judgment as a matter of law because no reasonable jury could have found that there was a violation of 93A under this simple breach of contract claim or that such violation was knowingly or willfully. I'd like to start with the first one. I know the record of the case is rather large. It was a jury trial, a Forte jury trial. But the issue on our first argument is actually rather straightforward. The issue really boils down to whether full spectrum proved at trial that the parties had reached an agreement on the material terms of an implied contract or a contract such that an implied contract was created. As the court's well aware, fundamentally, there's no contract. If there's no agreement on material terms, if only one party intends to be bound or if the parties are still engaged in negotiations, which was going on here over this four-week period of time, or if they only... On what basis did you ask for and receive and use the source code? Well, let me back up. Factually, my client had a contract with CIVCO to produce this code. Can you just answer my question, please? The source code that we had was source code that was largely paid for by my client under contract with CIVCO, with the exception of a small amount of code. But they didn't have, in large part, what was worked on over this four-week period, as I understood what the evidence was at trial. Does that answer your question, Your Honor? No, it doesn't. I asked you basically three questions. Okay. On what basis did you ask for the source code? On what basis did you receive it? And on what basis did you use the source code? My client's possession of source code arises out of their involvement with CIVCO as the prior party that they had a contract with. Well, who had the source code? What did you ask for it? I'm not sure I understand the Court's question about when we asked for the source code. Didn't you ask for the source code at some point? We didn't ask for the source code per se. I think some code might have been transferred, small pieces that was being worked on over this four-week period. But, in fact, what we were told actually, and what's in the record is, towards the end of this four-week transition period, what we were told was, we can't give you the source code until you work out your contract with, you terminate and end your contract with CIVCO. So you never received the source code? No. We had code, but it was code that was worked on and paid for prior to the transition period. Not necessarily, maybe a small piece of code that was worked on over this four-week period, but not, that's it, Your Honor. That small piece, who had that small piece? My client had a small piece, I believe, that might have been transmitted. Well, did you receive any part of the source code from Forte? From Full Spectrum. From Full Spectrum? I'm sorry. I do believe during the four-week period, a small piece was transmitted, but it wasn't like, the code wasn't completed, this wasn't a completed software program. My recollection is that any code that was transmitted was to demonstrate that, you know, maybe what the status of the project was, but my client had a contract with CIVCO, and CIVCO, using Full Spectrum, the plaintiff in this case, produced source code that my client paid for. What we're talking about here is the alleged work that was done over a four-week period after CIVCO essentially bailed out of the project. All right. Thank you. It doesn't mean I'm satisfied, I just said all right. I don't think I'm going to get an answer from you at this point, so it's all right. Again, this is a question of whether, fundamentally, there's no contract, there's no agreement on material terms, or if only one party intends to be bound. And to put it another way, the failure of the parties to reach, to reduce the uncertainties of the definite terms of a contract is fatal, particularly when they haven't formalized the negotiations. And there's no question, based on the evidence of trial, that the parties were continuing to engage in negotiations over this, again, it's a four-week period of time, involving some fairly complex computer software. Can I just, just so I understand, if we disagree with you on the jury trial issue as the Chapter 93A claim, and we disagree with you that there was, should have been table B on the Chapter 93A claim. Yes. Do you agree we don't need to decide this issue? Yes, Your Honor. Okay. I do agree with that, yes. So, and I just, I want to make one, so against this background, I really think it's important to point out to the Court, as I'm sure you've read, that on summary judgment, Judge Hillman decided, as a matter of law, that a written contract was not an enforceable contract. It was a contract signed on May 2nd, between the parties about two and a half weeks into the alleged transition. And really, the evidence of trial is no different than what was before the Court on summary judgment. And frankly, our perspective is we should have gotten summary judgment at that point, because for the same reasons he said that the written contract was not an enforceable contract, there was no implied contract at that point, because there was no agreement on what the status of the project was, what the scope of work was going to be. Wasn't the scope of the project in the document called requirements? Well, that was very much in flux, Your Honor. When the transition allegedly happened, CIVCO, and keep in mind, this was sort of, at least from Full Spectrum's perspective, an agreement by proxy, because there was no conversations between my client and Full Spectrum prior to the alleged transition day. I mean, this was CIVCO desperately wanting to get out of its contract and essentially, you know, trusting Full Spectrum upon my client. So... If I might. Yes. The plaintiffs seem to characterize the case on turning on the credibility of Toby Henderson. Yes. Forte's president. Yes. Who sort of denies there's any deal, but the jury could have disbelieved him. Correct? Yes. They do not set aside verdicts where the case turns on the jury's assessment of credibility. Do you have an argument independent, assuming the jury found him not credible? I do, Your Honor. And really, what I'd ask the court to focus in is on the testimony of the president of Full Spectrum. Okay. Where, again, he testified at trial that he had no conversations with anyone at Forte prior to this alleged transition date, no conversations such that an agreement could have been reached on where we're at with the project, how much you're going to pay me, that Forte understood what the status was. Is that testimony in conflict with the Toby Henderson testimony? No. On that point, it's consistent. I think where there's conflict is when they first spoke. I think Mr. Henderson's testimony was much later into the process, maybe towards the end of April. Mr. Dallas, I think, maybe earlier. But certainly not within the first few days of when this agreement would have reached. I seem to be hearing an insufficiency of the evidence, given the burden of proof. Yes. It was on Full Spectrum. Is that what this comes down to? I do believe that that's what this has come down to, Your Honor. Again, it's no different than the court finding that this written agreement, which at least had some terms, which was reduced to writing and signed by the parties on May 2nd, is not an enforceable contract. I mean, they were still negotiating. The court found that that wasn't enforceable. It's sort of hard to see how, at a point prior to that, the parties hadn't reached agreement on material terms to an implied contract. If we agreed with you on this issue, would the Chapter 93A verdict then be in jeopardy, independent of your Seventh Amendment argument? Yes, it would, Your Honor. And the reason would be because there were two theories of the Chapter 93A liability. One was dependent on there being a contract, and one was not dependent? And you can't tell from the verdict? I understand what you're asking. No, the theory of liability in the 93A was under the derivative of the breach of contract in Guantanamo counts. No question about it. Well, but I thought, at least as argued by the other side, they contend that you could find it even if you didn't think that there was a contract. Contract. No, the theory of their case was that the 93A piece arose out of the alleged breach of contract. Negotiation. They don't say that you have to prove that there was a contract for it, do they? That's not the theory. They pressed it at trial, Your Honor. Was the jury instructor aware of the other on that? Anyway, it doesn't matter, because it clearly is a problem if it was only based on an implied contract. But wouldn't it also be, given the general verdict, wouldn't it be a problem if it was? Well, the amount awarded for damages matches the amount they sought for the contract claim. Yeah. The jury was instructed in order to find. But you can find a Chapter 93A violation even if you find no contract. I think under a circumstance like this, I would disagree. I think where the 93A claim arises out of the alleged Guantanamo marijuana breach of contract claim, if that claim fails, then the 93A claim necessarily fails. Well, it all depends on the facts, because there are cases from the state court saying you don't need a breach of contract in order to proceed with the 93A claim. Right. Sometimes yes, sometimes no. But we'll hear from your opponents on that. It looks like I have only a couple of minutes left. If I could just address the Seventh Amendment issue. Your Honors, I'd like to point out, it's an interesting, outstanding, full-spectrum position that there is a right to the Seventh Amendment, a Seventh Amendment right to a jury trial for a 93A claim. When they moved in Lemonade to have this issue decided by the jury, they asked the court permission to have it submitted to the jury. In fact, they argued in the alternative that the court should exercise its discretion and submit these issues to the jury. I think what's maybe complicating it a little bit is we don't really have a sense from Judge Hellman in terms of the basis for what his decision was. My recollection in discussing and arguing the issue with him was that he'd researched the issue, and this is what they felt. You don't dispute that the implied in contract theory had to be, that there's a Seventh Amendment right for that? I think that might be an open issue because, I'm sorry, are you talking about the implied? Not the quantum merits implied? No, there would be a jury trial on that claim. So this couldn't have been an advisory jury with respect to that claim? Not with respect to that claim.  So clearly this was a jury that was meant to be binding since it adjudicated a claim about what the Seventh Amendment required. You don't need to be suggesting that. No, I'm not suggesting that this was supposed to be advisory. I'm saying that Judge Hellman did put it to the jury for a final and binding termination on whether there's a violation. So what's the significance of the fact that they waived it? There was no argument that they, in fact, had a Seventh Amendment right to a jury. You think they waived that? I think it's possible that they waived that, Your Honor. Possibly they didn't, so what do you think? I think they waived it, Your Honor. I think they waived it. In opposition to the motion, we directly argued the Wallace case and the Knee case, that, in fact, this issue has been decided, notwithstanding the Crappier-Mauricean case, that that issue has been decided and that there is no right to a jury trial in the Seventh Amendment. And, in fact, under Rule 39, really what should have happened here is that the court should have sought consent of the parties, whether he could submit it. We obviously didn't consent, and he should have retained that claim for determination. Although in his summary judgment ruling, which you did very well by, on the issues that he said were disputed, he forecast that he thought a jury should be the one to at least initially address all of that. I think that's fair. I think that's what the decision said. But our position is that there is no right to a jury trial under the Seventh Amendment for a 93A claim. If you're right, what's the remedy you're seeking? Do we just remand him to make factual findings? I think it's reversible error. I understand that, but what would we be telling him? Because the Seventh Circuit has said, and Wright and Miller, as far as I can tell, suggests that the appropriate thing to do here is just send it back for the district court to make the factual findings you didn't get under Rule 52, which is what, in your brief, you say was the only prejudice. As far as I can see that you identify that you didn't get the findings under Rule 52, so we could just send it back and say do the Rule 52 findings. I think that we would be fine with that, Your Honor. You're not actually asking for a new trial? No. Judge Hellman heard the case. He was there throughout the trial and heard the case. I think with the benefit of those findings, we could have an understanding as to whether, obviously, he agrees or disagrees. We don't know with the jury's finding and what the basis for that is under this case. But you moved to set aside the 93A verdict after trial, and he disagreed, right? He disagreed. He did not issue a written decision at all. So we don't. He just denied the motions, Your Honor. Okay, if he'd written a decision that said, gee, I think the evidence really supported the jury finding, would you be making this Seventh Amendment argument? Perhaps not, Your Honor, but we don't know the answer to that question because we don't know. Would it depend on what grounds he gave for denying the motion? So, I mean, does it matter to you whether he says in denying the motion, there's enough here that I won't overturn it versus the reason I'm not overturning it is because I agree with it? Well, I think that's a good distinction. We really don't know whether, you know, I mean, he clearly felt that this was a case that was going to be decided by the jury and it was going to be binding. Or he could have thought, well, gee, under 93A, I have some discretion about whether I'm going to give this to the advisory jury or whether I'm going to decide it, and I see no reason to exercise my discretion here to make an independent judgment. Do you agree with that? Well, he, I believe that his position was the jury's going to decide this, and again, we don't have a written decision on the motion in Lemonade, but presumably he decided that the jury must hear this claim. And I don't have discretion to keep any of it back. If he, I mean, our perspective, if he had some discretion to keep it back, under Rule 39, he would have had to have, you know, consent to send it to the jury to be binding, so. Yeah, but what's odd is 93A seems to give him that discretion, and can't he decide at the outcome, gee, this isn't the sort of case where I'm going to keep control of the ultimate decision? At least as I understand state court practice, some judges can do that at the outset. They can say, well, I know technically the jury is an advisory jury, but I'm warning you, counsel, I'm not likely to interfere with that. Right, I don't think that, you see, that sounds like the practice in the superior courts, Your Honor. I think that there's a, obviously there's a difference here in federal court under Rule 39, and, you know. Can I, it sounded like you said this intrigued me, that the order you're appealing from gave no reasons. Is that right? The JNLB, the denial of the, gave no reasons. There was no written decision, no. So, if we remanded for him to give his reasons for that, to facilitate our appellate review, it's quite possible in doing that he would then also explain why he did it, and that would take care of the Seventh Amendment issue, wouldn't it, potentially? It may, Your Honor. So one possibility in this case is just to facilitate our review, we could just remand for him to please explain his JNLB order, noting that it may be relevant to the Seventh Amendment issue. If he then were to say, gee, I think the jury got it right, your Seventh Amendment issue goes away. I think you're right, Your Honor. I think that that's quite possibly the case. It's hard to predict, though, what he'll do. To your question, we're not sure if he didn't do that because he felt like, I don't have the authority or discretion to over, you know, to treat what I previously said they were going to decide as advisory. It would be odd for us to decide a major constitutional issue under these circumstances. Agreed? Yes, Your Honor. So partly that's what we're thinking about. I'm not thinking anything. But he's listening very closely. I'm listening very carefully, though. So especially with the absence of any explanations either on the motion in Luminae, whether I know you all seem to agree on what he was doing, but it's not clear to me what he was doing. And then the absence of any explanation on the JNOB. Right. Okay. Thank you. Thank you. Mr. McClone, good morning. Good morning, Your Honors. My name is David McClone, representing Full Spectrum, and with me is my colleague, Christian Stevens, if he's the court. I'd like to start by discussing the source code because it's very relevant to the 93-8 count. And it's what I believe the jury found extremely compelling was the testimony of Toby Henderson and his failure to answer conclusively whether he had two sets of source code or one. One source code presumably came from CIVCO while Full Spectrum worked for CIVCO. And the other source code was obtained from Full Spectrum under false pretenses by FORTE. So at some point around about May 14, 2012, Toby Henderson is shropping his acquisition of source code, which he never paid for, or his company never paid for, to third parties. This became one of the nexuses that the 93-8 case is based upon. And when I cross-examined Toby Henderson, he waffled, but at one point he denied that he had the Full Spectrum source code. And there is testimony with respect to that in the appendix 667 and the supplemental appendix 0058. And so he was either lying to the third parties that he had the source code of Full Spectrum, who had been working on it for a month, or he was lying upon the stand. So the jury saw all this and had a chance to weigh his credibility. The way they obtained the source code from Full Spectrum was they represented that they had a more powerful computer and that the functionality of the software which was written could be more quickly ascertained. And they sent emails from each other back and forth. Again, appendix 667, let's hammer them, was one of the quotes. And use the one box excuse that the one box was their more powerful computer. The next day that was put into action and an email went to my client and said, to reduce workload, please send us the source code. So they had, they got the source code. They also represented that they were looking forward to continued progress and success. And they later represented the third parties that the source code was no good, although internally they were saying it was great. So that was what we call the one box excuse. They said, let's use this excuse to get the source code. So they got the fruits of my client's work. They did it by false pretenses. And they represented the third parties it was no good, even though they thought it was great. And if that is not enough of a 93A violation, especially when you don't pay. I've missed a beat here. Yes. I thought you opened by saying they then tried to sell the source code to third parties. Only now you're saying they bad mouth the source code to third parties. Seems inconsistent. And that's what the jury picked up on because that was exactly his testimony. And that was exactly the documents that were coming in. He was on a fast track project, and I say he. I'm saying Toby Henderson, Forte. And he was doing anything to keep my client working and to appease Proton, another third party owners of the project. And he was telling them whatever he needed to tell them in order to keep them appeased. And he would tell them at one point that Full Spectrum was working. Once Full Spectrum decided that they were pulling out of the contract, he told them it was no good. Ironically and fortuitously for a plaintiff's attorney, his own people were sending emails back and forth saying they're on track and what's the effect of the product is pretty good. But at the same time he's telling third parties that it's no good. Later on, or not so ironically, he had asked Full Spectrum to sign a non-compete agreement with Proton. And this is the same party he's representing to that the product is no good. Lo and behold, Proton invites some bids. And lo and behold, they do not choose our client after this contract is over. Got it. Okay. All right. So there was a question earlier, I believe from Judge Barron, about whether your 93A claim was entirely derivative of the implied contract claim or whether there was an independent basis for it as well. It's misconduct. First of all, I don't believe there has to be. I believe 93A, that's not your Honor's question. No, because of this maligning the product to third parties. Okay. So even if you had lost on the implied contract, there was a basis for the jury to find a 93A violation out of the bad-mouthing to third parties? Yes, there were peripheral facts beyond the contract, which supported the independent verdict of the jury on 93A. Okay. But for that reason, if the 93A claim shouldn't have gone to the jury, it's got to be thrown out. On the Seventh Amendment grounds, Your Honor? Because if I could ask Your Honor, on what basis does it have to be thrown out? Chapter 93A claims sometimes could be, another way to put it, if a Chapter 93A claim is hard to categorize and species of 93A claims might be thought to be derivative of common law and species of them might be thought to be equitable, you might think a Chapter 93A claim, which is derivative of an implied contract claim, is more easily categorized as the, well, actually, maybe it helps you, as the non-equitable species of it. I disagree. I guess I'm just trying to figure out whether that, the fact that both an implied contract claim and a Chapter 93A claim were each put to the jury here gives us any purchase or insight into whether the 93A claim here should be categorized as the equitable version or the non-equitable version, which might bear on the Seventh Amendment conclusion. I disagree with you, Your Honor, because neither of them are equitable counts. No, I know that. One sounds in tort, one sounds in contract, or maybe they both sound in contract. It's, you know, so both of those counts, both of the contract-derived 93A count and the third-party maligning count, that sounds in tort. Both of them, both of them are within the legal remedy within 93A, which clearly says you can have damages and you can have equity. Can I, on the motion to set aside the 93A verdict, did it say the evidence was insufficient on both grounds? Was there any concession? No, there wouldn't have been a concession. There are two grounds the jury could have reached for the 93A verdict. One is the badmouthing. The other is the, in the course of breaching the implied contract, you behaved very badly. The problem is we don't know. As Judge Barron says, that's a general verdict. You would be okay if we found on the implied contract, contrary to your brother, that the evidence was more than sufficient. That then would also support the 93A verdict. But if it's on independent grounds and didn't turn on the implied contract theory, then there may be a problem. And the problem may be that it went to a jury. That's how we're beginning to think of some of the issues in this case. As I understood it, the general law is that the harmless error doctrine applies. So even if the jury had some independent theory for the 93A violation, and that was the basis for it, your brother, who is objecting to you having a jury, would have to show that somehow he's been harmed out of all of this. And what his argument is, is he was entitled to have specific findings of fact made under Rule 52A, and then he has to meet the harmless error standards under 52A and Rule 60. What's your argument that any error is harmless? Well, Your Honor, I disagree with any kind of implication that somehow equitable consideration somehow got into the jury room. They were charged. No, you're making your Seventh Amendment argument, which you're free to make. But I'm more concerned with sort of the so what it went to the jury. What is his harm? And what is your argument there's no harm? Your first argument is we had a Seventh Amendment right. But do we have to decide that issue? Do you have an independent argument that even if that was an error, it was harmless? Well, there had to be an implied finding by Judge Hillman that it was a Seventh Amendment basis that went in there. But there were several other rules that protected them. The instructions, Rule 50, the special questions to the jury essentially handcuffed the jury into what thought process they were going through. So what were the special questions? Did you find it's an exhibit here? And so did you find that the defendant's behavior was unfair and deceptive? If so, are they liable for money? If so, how much? Those wouldn't cure the harm that they're identifying. Those just tell you more specifically what the jury thought. What they're objecting to is they don't know what the judge thought. So what is the argument that would be responsive to the claim that if there was no right to a jury trial, we were harmed because we never got findings from the judge? Because under Rule 39, the judge had to make a determination that the Seventh Amendment applied. And it had to go to a jury, otherwise you're depriving us of our jury right. Right, and if he got that wrong, I know you think he didn't. If he got that wrong, they say then they were harmed by that because they had a right not to have it go to a jury since they objected. Do you have any argument as to why, even if they're right as to all those steps, they still lose? They still lose. Are you talking about a review de novo of the determination or the implication? I want to say that Judge Hillman, if I were to conclude that the district court erred in putting this to a jury and that the reason he erred is because the Seventh Amendment does not require it to go to a jury, that under Rule 39, since they objected to it going to a jury, he had no authority to give it to a jury. If I agree with all of those propositions, I'm asking, could you still win? Well, I believe that the special questions, I disagree with your characterization, the special questions do not protect them because these are findings of fact that the jury is making. But their whole point is that it shouldn't have been making facts of fact, the judge should have been. So how do the special questions tell us what the judge would have done? It doesn't. We know that the judge found his fault. You don't have to have a conclusion that you can win if you lose on that proposition. I'm just asking if you do. No, I don't believe there's any prejudice because there's been a finding of a Seventh Amendment right and that there are four or five procedural rules that... Are you making the argument that if you were to ask the judge, it's perfectly obvious that he would not make independent findings contrary to the jury? And it's perfectly obvious from the way he's handled the case all along and the strength of your evidence? Yes. That a remand to the judge would be a fruitless exercise, just add more money to what it costs to try this case, which neither of you are well-heeled to invest in further pursuit of this case. It would be a fruitless exercise and we know the judge did agree with the jury. How do we know that? Because... All we know is that the judge thought the jury didn't act so unreasonably, it should be thrown out, that doesn't mean he agreed. And if he believed, as you said, we were telegraphing earlier on in the summary judgment motion that this was going to go to the jury... Because he said it was a question of the jury, where is there any evidence in the record that the judge actually agreed with the jury as opposed to thought a reasonable jury could come to this conclusion? I just don't see anything in the record that shows what the judge thought if he was the fact finder. We know that he didn't disagree, we know... Yeah, but the question is he would have to have agreed, I think, if it was him. He came to a decision on his own saying, gee, if I was the fact finder, I might find this way. He would have to say, I find this way. And there's just nothing in the record that indicates what his finding is, isn't that right? There's nothing in the record that indicates what his finding is, because there can't be, because he found the jury right. Are you making an argument that under Rule 39, the judge has some discretion to be wrong on determining whether it should be dragged to the jury? No, you don't have the discretion to be wrong. I do know that a judge at that point would know that he or she could not disagree with the jury on 93A as they do in the state court, say the Claremont case or something like that. The judge knows at that point that it's fully within the jury's hands. And there's nothing, it's completely consistent with our Constitution, because the founders believed that judges on the federal level should be checked. And that is argued in their brief. But the beauty of the system now and the consistency and the inconsistency with the state court, if it's done this way, is that the founders did believe there should be a 7th Amendment jury right for anything that's not equity, essentially. And so the judge has discretion at the state level. I'm arguing that the federal courts should come up with a rule that is different from the one applied in the state courts as to the 7th Amendment and 93A claims. That if a case were in state court, the judge would have the authority to set aside an advisory jury verdict. But in the federal court, a judge would have no such power. That's the consequence of what you're arguing. That's the consequence of the 7th Amendment. No. I beg your pardon. But there are some practical issues about that that make us sort of leery of getting into this area. Can I give you another example? In a 93A case, an injunction is the purpose. And that's the count that comes to the driver of fact. At that point, the judge knows that it's outside the 7th Amendment. And he or she can disagree with the jury, should there be an allied count that sounds outlawed, and the jury fines. That check is still on the jury. But if there are legal claims upon which a judge finds that the 7th Amendment controls, that that option may not be there. All right. Thank you. Thank you, Your Honor. Thank you. I understand why the court decides not to get into the 7th Amendment issue and the complexities, claimsability and all that. And I think, Judge Lynch, your question is a good one. There are really two decisions that call into doubt Wallace, which I think Wallace was correctly decided. I think Nye was correctly decided. I think it's the right result. And frankly, the QLT case that Judge Young decided, Judge Young, as we all know, is a champion of the jury system. And it may explain why he decided that way, because if he finds that there is no right to a 7th Amendment trial for an i3 claim, then he cannot submit to an advisory jury without the consent of the party. So I certainly see the tension here. And the last point I wanted to make, there is nothing in the record. You didn't make any substantive argument, as far as I could tell, as to why a claim like this would not fit under the 7th Amendment. You say we've already decided it, but if we have also said we haven't decided it. So I would like to see what the argument under chauffeurs, if that's what we're supposed to apply, why this wouldn't be a 7th Amendment. What about it makes it not? I mean, we've been told it's an analog to a contract or a tort type claim. Right. And then chauffeur says, gee, when you have something that looks like that, we're kind of an equipoise, so we look to the nature of the remedy. I don't think you're making an argument here that the damages issued here, particularly when it's on an implied contract, the same amount as anything other than a legal damages, typical at-law thing. So what about this wouldn't make it a 7th Amendment? Well, as you heard from my brother, he started off talking about the source code. We'll leave kind of where we began. There was a 11 count that wasn't. But that's not what the verdict was. I understand, Your Honor, but there was evidence. The verdict here was that there was an implied in fact contract. If that's true, that is a 7th Amendment claim. On the implied contract claim, yes. Yes, so then what about the Chapter 93A claim? It's the same damages, $133,000 for the same course of conduct. What about this looks not like the kind of ordinary thing that under the 7th Amendment you're supposed to try? The remedy is if it had been just an implied contract claim with this exact same damages award, we'd say a 7th Amendment triable. They added the Chapter 93A count. Well, Chapter 93A does look a little bit like a tort action. It's not identical, but Stoker says it doesn't have to be identical. And since the remedy we're dealing with is just like the kind of remedy that could be issued for something that is 7th Amendment triable, an implied contract claim, what's the problem with saying if you have to apply the 7th Amendment test, this is a 7th Amendment triable claim? Not every Chapter 93A claim might be, as they know, but this one certainly would be. What's wrong with that conclusion? I think that I have an issue with the premise, and that is that while certainly the question is decided under federal law, I think some deference ought to be given to the Massachusetts State Courts in terms of deciding that. What case suggests that? Is there any case that suggests that? I would point to Nye, the Nye-Burley case. Any Supreme Court case that suggests we're supposed to do the 7th Amendment analysis that's an eye towards how the state thinks about it? No, no, I'm not saying deference, but that they have essentially, the court can adopt the analysis that a Chapter 93A claim, as SJC has decided, and which I think Wallace did, is an equitable claim, and that really ends the inquiry. Just because the state labels the claim as equitable, that's it? No, the analysis that's in Nye v. Burley. You could adopt the analysis, not because they say so, but I think that's what Wallace did. Is that pre-chauffeur's? Nye was pre-chauffeur's? Right. So why would we adopt that? Why wouldn't we apply chauffeur's? I think the analysis is really looking at whether it's equitable or illegal in nature, and the courts have addressed it, have decidedly come down to the 93A claims are equitable in nature. Can I step back for a moment? If you were to lose on your claims about the jury was wrong on implied contract, and the jury was wrong on the 93A finding, and all you can win if you pursue the 7th Amendment claim is a remand to the district court for a statement of reasons, are you pursuing the claim, the 7th Amendment claim? Well, I think it, back to your question, I think it might moot the point. If Judge Hillman, if it goes back to Judge Hillman and he were to say, if I had, it might not moot it. Well, except for if there's lynches, are you going to pursue that remedy? Possibly, Your Honor. No, you have, you need to tell us. One answer may force us. One answer may propel us into getting into the constitutional issue. The other answer would allow us to avoid the constitutional issue. I think if the case were remanded for determination by Judge Hillman, some explanation, and you were to. You are only entitled to that if there, if we reach through the 7th Amendment and find that there was not. Do you want to know what Judge Hillman thinks, if that, even if he thinks you're wrong? I, sort of secondary to the question, we think you should have done it in the first place, but yes. Okay. Thank you. Thanks, Your Honor.